# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 19, 2014          Decided May 20, 2014

No. 12-7088

D.J. WU, ET AL.,
APPELLANTS

v.

JOHN CRUMPTON STOMBER, ET AL.,
APPELLEES

———

Consolidated with 12-7097

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:11-cv-02287)
(No. 1:11-cv-01142)

———

*Matthew E. Miller* argued the cause for appellants. With him on the briefs were *Jonathan W. Cuneo* and *Joel Davidow*.

*Robert A. Van Kirk* argued the cause for appellees. With him on the brief were *Sarah F. Teich*, *Brian C. Rabbitt*, and *Gary A. Orseck*.

Before: HENDERSON and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

2

Opinion for the Court filed by Circuit Judge KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Carlyle Capital Corporation invested in residential mortgage-backed securities. In June 2007, in order to raise capital, Carlyle Capital sold shares in the company to private investors. During the real estate and financial crisis of 2008, Carlyle Capital's investments lost their value, and the company went out of business. In this suit, former Carlyle Capital investors alleged that Carlyle Capital made material misstatements and omissions in its June 2007 sale of securities and thereby violated the federal securities laws. Plaintiffs also alleged violations of Dutch law. In thorough opinions, the District Court dismissed the claims. We affirm.

I

Carlyle Capital was an investment fund. Between 2006 and 2008, it invested the majority of its capital in AAA-rated, Fannie Mae-guaranteed and Freddie Mac-guaranteed residential mortgage-backed securities. In June 2007, Carlyle Capital conducted a private offering of its shares to accredited investors. Such accredited investors must meet certain high personal wealth requirements at the time they purchase securities. *See* 17 C.F.R. § 230.501(a). The basic idea of Carlyle Capital's offering was to raise more capital so that it could purchase even more residential mortgage-backed securities.

In the spring of 2008, amidst the ongoing real estate meltdown, Carlyle Capital collapsed. Three years later, two sets of investors brought class action suits in federal district court in Washington, D.C. The two cases were later consolidated. Plaintiffs alleged, as relevant here, that Carlyle

3

Capital made certain misstatements and omissions during the June 2007 Offering, in violation of Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.  *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  They also eventually alleged common-law fraud and misrepresentation claims.   In the midst of the D.C. litigation, these same plaintiffs, joined later by some other new plaintiffs, brought a separate suit in New York state court based on the same nucleus of facts and raising the same basic claims.   The New York action was removed to New York federal district court and then transferred to the D.C. federal district court to be considered along with the consolidated D.C. suit.

Carlyle Capital moved to dismiss the consolidated D.C. case for, among other things, failure to state a claim under Rule 12(b)(6).  The District Court granted Carlyle Capital's motion to dismiss the consolidated D.C. suit.  *See Wu v. Stomber*, 883 F. Supp. 2d 233 (D.D.C. 2012).  Carlyle Capital also moved to dismiss the New York action, and the District Court then dismissed the New York suit as duplicative.  *Id.*

Plaintiffs now appeal the dismissal of their consolidated D.C. suit and the transferred New York case.  Our review is de novo.

II

Plaintiffs' complaints in both the D.C. and New York cases primarily allege that Carlyle Capital's June 19, 2007, Offering Memorandum contained material misstatements and omissions and thereby violated federal securities laws.

Under Section 10 of the Securities Exchange Act and SEC Rule 10b-5, a company issuing securities may not make "any untrue statement of a material fact" or omit a "material

4

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5; *see* 15 U.S.C. § 78j(b).

In its June 19 Offering Memorandum, Carlyle Capital disclosed a first-quarter gain of $11.6 million in the value of its portfolio, which was primarily residential mortgage-backed securities.  In the Offering Memorandum, Carlyle Capital also disclosed an updated figure as of June 13 to reflect changes since the end of the first quarter.  Between the end of the first quarter and June 13, the value of the portfolio fell by $28.9 million.  As a result, as of June 13, Carlyle Capital's portfolio had a year-to-date loss of $17.3 million.

That volatility, and the latest figures, were all disclosed in the June 19 Offering Memorandum.  And plaintiffs do not dispute the accuracy of those figures.  Instead, plaintiffs allege that an internal email from one Carlyle Capital director indicated that as of June 11 the year-to-date decline in value of Carlyle Capital's portfolio was $76.2 million.  According to plaintiffs, Carlyle Capital's omission of that June 11 figure constituted fraud.

One difficulty with plaintiffs' theory is that Carlyle Capital did in fact disclose the latest, updated figure, the June 13 figure and did not suggest that the snapshot of June 13 was anything other than just that – a snapshot of June 13.  Moreover, the Offering Memorandum warned against relying on the stability of its residential mortgage-backed securities.  It informed potential investors that the market value of Carlyle Capital's securities was "highly volatile" and "difficult to predict."  Offering Memorandum at 13.  And as plaintiffs' complaint itself acknowledges, it was widely known that the value of residential mortgage-backed securities nationwide was in extreme flux at the time.  *See*

5

Consolidated Complaint at ¶ 125, *Wu v. Stomber*, No. 11-cv-01142 (D.D.C. Dec. 5, 2011) (the price volatility of residential mortgage-backed securities rose 140% between November 2006 and September 2007).

Plaintiffs' theory has another major flaw as well.  On June 28, which was during the offering period and just nine days after issuance of the Offering Memorandum, Carlyle Capital announced that it was changing the terms of the Offering.  Carlyle Capital notified potential investors that it was postponing the pricing of the shares and issuing a *Supplemental* Memorandum.  That Supplemental Memorandum, issued June 29, contained updated financial information for the period between June 13 and June 26, 2007.  That updated data informed investors that the loss in value of Carlyle Capital's portfolio had continued.  In particular, the Supplemental Memorandum disclosed that as of June 26, the year-to-date loss in its portfolio was approximately $72.6 million.

Plaintiffs seem to acknowledge that the June 29 Supplemental Memorandum would have rectified the omission that they say existed in the June 19 Offering Memorandum.  Plaintiffs contend, however, that the Supplemental Memorandum was not distributed to them and that there is no evidence that anyone read it.  But the investors here were very wealthy and sophisticated.  And a reasonable investor – not to mention a wealthy and sophisticated investor – surely would have paid close attention to the Supplemental Memorandum.  After all, the cover of the June 19 Offering Memorandum and two later press releases had expressly informed investors that additional information would be available from the New York broker-dealer who received their subscription agreements or from Carlyle Capital's office in the Netherlands.  And the cover of the June 29

6

Supplemental Memorandum informed investors that it formed "part of," "must be read in conjunction with," and "supercede[d]" the Offering Memorandum. Supplemental Memorandum at 1.

Put simply, given the accurate disclosure in the initial June 19 Offering Memorandum and the additional accurate disclosure in the June 29 Supplemental Memorandum, plaintiffs have not sufficiently alleged any material misstatement or omission.

Plaintiffs' remaining argument proceeds from the assumption that Carlyle Capital, as of June 2007, was already aware of problems in the larger market that made the collapse of the company certain, but did not disclose those problems. But the Offering Memorandum contained extensive cautionary language about what had already occurred in the market and what might follow. Carlyle Capital informed potential investors that rising interest rates had caused defaults on mortgages, resulting in a decline in the value of its residential mortgage-backed securities. The Offering Memorandum also cautioned investors that Carlyle Capital's investment strategy might lead to a further fall in the value of its securities and result in margin calls on the mortgage-backed securities that it could meet only up to a point.

In sum, Carlyle Capital had no duty under federal securities laws to make further disclosures in the Offering Memorandum or, as plaintiffs suggested at oral argument, to put "a skull and crossbones" on the press releases accompanying the Supplemental Memorandum. Oral Arg. at

7

11:56.   The District Court properly dismissed plaintiffs'
federal claims.[1]

### III

We next consider plaintiffs' common-law fraud and
misrepresentation claims.

### A

Plaintiffs in the consolidated D.C. suit assert common-
law fraud and misrepresentation claims and label those claims
as Dutch-law claims.  But applying D.C. choice-of-law rules,
it is D.C. tort law not Dutch law that applies.  And plaintiffs
have not sufficiently alleged a fraud or misrepresentation
claim under D.C. law.

As a general matter, we must apply the choice-of-law
rules of the jurisdiction in which we sit – namely, the District
of Columbia.  *See GEICO v. Fetisoff*, 958 F.2d 1137, 1141
(D.C. Cir. 1992).  D.C. choice-of-law rules require that we
apply the tort law of the jurisdiction that has the "most
significant relationship" to the dispute.  *Washkoviak v.
Student Loan Marketing Association*, 900 A.2d 168, 180
(D.C. 2006) (internal quotation marks omitted).  That inquiry
requires that we consider "where the injury occurred," "where
the conduct causing the injury occurred," "the domicile,
residence, nationality, place of incorporation and place of
business of the parties," and "the place where the relationship
is centered."  *Id*. (quotation omitted).

---

[1] Plaintiffs argue that the District Court should have allowed
them to file a proposed amended complaint.  But as the District
Court concluded, plaintiffs' proposed amended complaint likewise
failed to allege a material misstatement or omission.  *See Wu v.
Stomber*, 292 F.R.D. 69 (D.D.C. 2013).

8

Plaintiffs say that Dutch law applies here because the relevant shares of Carlyle Capital were traded on a Dutch exchange and the Offering Memorandum was filed with a Dutch regulator.  But the "conduct causing the injury" was a series of statements made by Carlyle Capital, whose principal place of business was in Washington, D.C.  The other companies named as defendants in this action also primarily conducted their business in Washington, D.C.  And plaintiffs' losses occurred at their places of domicile in D.C., Virginia, and Maryland.  In fact, plaintiffs themselves stated that Carlyle Capital "has no rational connection to the Netherlands other than Carlyle's decision to list [the company's] shares there."  Consolidated Complaint at ¶ 109, *Wu v. Stomber*, No. 11-cv-01142 (D.D.C. Dec. 5, 2011).

Taken together, those factors point to D.C. law.  Even if the balance of factors were uncertain, moreover, D.C. choice-of-law rules require, in a case where the factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum state.  *See Washkoviak*, 900 A.2d at 182.

Like federal securities law, D.C. law requires a material misrepresentation or omission for a fraud or misrepresentation claim.  *See Sherman v. Adoption Center of Washington, Inc.*, 741 A.2d 1031, 1036-37 (D.C. 1999).  For the reasons we outlined above in connection with the federal claims, plaintiffs here have failed to meet that standard.[2]

---

[2] On appeal, plaintiffs say that they also advanced a common-law claim based on Carlyle Capital's *post*-Offering statements.  *See* Wu Br. 41-44.  But plaintiffs' sole appellate argument on that point is that Dutch law should apply to that claim.  As we concluded, however, Dutch law does not apply.

9

B

Plaintiffs in the New York action also argue that the District Court erred in dismissing their common-law fraud and misrepresentation claims.

The New York action was transferred from New York to D.C.  A diversity case transferred from one federal forum to another generally retains the state choice-of-law rules of the original forum.  *See Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568, 582 (2013).  Under New York choice-of-law rules for conduct-related torts, courts look to the "locus of the tort."  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) (internal quotation mark omitted).  For fraud cases, that "is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated."  *Id.*  In this case, that points to the location where the plaintiffs sustained losses.  *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 292 (S.D.N.Y. 2000).  The domiciles of the plaintiffs in the New York action were either New York or D.C.  That means that either New York law or D.C. law applies, but not Dutch law.  As we have explained, plaintiffs' claims would not suffice under D.C. law.  Nor would they suffice under New York law.  The elements of fraud and misrepresentation claims in both New York and D.C. are essentially the same.  Both jurisdictions require a material misrepresentation or omission.  *See Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000).  As noted above, plaintiffs here have failed to satisfy that standard.

10

* * *

We have considered all of plaintiffs' arguments. We affirm the judgment of the District Court.

*So ordered.*